947 So.2d 150 (2006)
Stephen B. LaCOSTE, et al.
v.
PENDLETON METHODIST HOSPITAL, L.L.C.
No. 2006-C-1268.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 2006.
*151 David A. Bowling, Jennifer L. Dowty, Wilson & Bowling, A.P.L.C., New Orleans, LA, for Pendleton Methodist Hospital, L.L.C.
Peter S. Koeppel, Laurence E. Best, Peggy Wallace, Best Koeppel, A.P.L.C., and Val P. Exnicios, Liska, Exnicios & Nungesser, New Orleans, LA, for Stephen B. Lacoste, et al.
David A. Woolridge, Jr., Carlton Jones, III, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, A.P.L.C., Baton Rouge, LA, for Louisiana Patient's Compensation Fund Oversight Board.
Peter E. Sperling, Bruce A. Cranner, James P. Waldron, Frilot Partridge, L.C., New Orleans, LA, for Amici Curiae, Lindy Boggs Medical Center and Meadowcrest Hospital.
Kurt S. Blankenship, Robert I. Baudouin, Richard E. Gruner, Jr., Blue Williams, L.L.P., Metairie, LA, for Amicus Curiae, Tenet Healthsystem Memorial Medical Center, Inc.
(Court Composed of Judge JAMES F. McKAY III, Judge TERRI F. LOVE, and Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
On the application of the defendant/relator, Pendleton Methodist Hospital, L.L.C. ("Pendleton"), operators of Methodist Hospital ("Methodist"), we issued a writ of certiorari, docketed the matter for oral argument, and ordered briefing. We also ordered the clerk of the trial court to forward to this court the record in this case for our review.[1] The issue before the court is whether the trial court erred in denying Pendleton's exception of prematurity, asserting that the claims of the plaintiffs/respondents,[2] as successors to Althea *152 LaCoste ("Ms. LaCoste"), deceased, must first be presented to a medical review panel pursuant to La. R.S. 40:1299.47. For the reasons that follow, we reverse the judgment of the trial court in part and grant in part the exception of prematurity.
On 28 August 2005, as Hurricane Katrina bore down upon the city of New Orleans, Ms. LaCoste, an individual recovering from pneumonia and ventilator dependent, was transported by her family to Methodist located in the eastern part of the city.[3] Ms. LaCoste was admitted as a patient to Methodist. The record before us discloses the precise nature of Ms. LaCoste's condition upon admission to Methodist but not how her condition progressed thereafter. We take judicial notice of the fact that the electrical supply provided by Entergy New Orleans to the area of the city where Methodist is located failed during the hurricane. The record discloses that the emergency electrical generating system for Methodist also failed as the hurricane hit the city and that many patients were evacuated from Methodist after the hurricane. Ms. LaCoste, however, was not evacuated and died at Methodist.
The plaintiffs/respondents allege that life support systems used to sustain the life of Ms. LaCoste became inoperable for lack of power and that Pendleton had an inadequate evacuation plan that resulted in Ms. LaCoste's death. They further allege that Pendleton was negligent and committed intentional acts in designing, constructing, and maintaining a hospital that had insufficient emergency electrical power and allowed flood waters to enter its premises, thereby causing injury to Ms. LaCoste. By a supplemental and amending petition, the plaintiffs/respondents added Universal Health Services, Inc. ("Universal") as a party defendant, alleging that it too was an owner and operator of the Methodist, and that both Pendleton and Universal were negligent and committed intentional acts as formerly alleged. In addition, it is alleged that neither of them (or Methodist) had a facility available for the transfer of patients nor a plan to transfer patients in the event of a mandatory evacuation.
The exception of prematurity was heard on 11 August 2006, and the trial court, by judgment of 21 August 2006, denied the exception finding that the plaintiffs/respondents' claims did not sound in medical malpractice, i.e., the alleged wrongful acts were not treatment related or caused by dereliction of professional skill, but were rather due to deficient design of Methodist. In support of its judgment, the trial court cited Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992), which held that coverage by the Louisiana Medical Malpractice Act (La. R.S. 40:1299.41, et seq.) should be strictly construed. Effectively, the trial court found that the plaintiffs/respondents' claims against the relator sounded in tort and not medical malpractice.
After rendition of the judgment by the trial court, the plaintiffs/respondents filed a claim seeking a medical review panel, which was received in the Commissioner's Office of the Louisiana Division of Administration on 28 August 2006.[4] The Louisiana *153 Division of Administration administers the Louisiana Patient's Compensation Fund ("PCF").[5] In brief, they concede that some of their claims against Pendleton sound in medical malpractice. Apparently, the plaintiffs/respondents did not disclose to either the trial court or relator at the 11 August 2006 hearing that they contemplated filing a claim seeking a medical review panel. For that matter, we do not know whether the plaintiffs/respondents even considered invoking a medical review panel until after the rendition of the trial court's judgment on 16 August 2006. We understand this act to be at the very least precautionary in light of the Louisiana Supreme Court's decision in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, and its progeny, which holds that filing a claim sounding in medical malpractice in the trial court prior to seeking a medical review panel does not interrupt prescription against the health care provider.
In Coleman v. Deno, 01-1517, 01-1519, 01-1521, p. 17-18 (La.1/25/02), 813 So.2d 303, 315-16, the Louisiana Supreme Court set forth a six-part test to determine whether a claim sounds in medical malpractice and must first be presented to a medical review panel:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, . . .
(3) whether the pertinent act or omission involved assessment of the patient's condition. . . .
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.
We find that although plaintiffs/respondents couched their allegations against the relator in the form of premises liability in order to fall outside the ambit and fly below the radar of the Louisiana Medical Malpractice Act ("LMMA"),[6] i.e., failure to evacuate patients and failure to provide emergency electrical power to patients, they failed to fully contemplate the meaning if these allegations. We find the questions of whether Methodist should remain open in order to render care to its patients and whether Methodist should close and evacuate all patients relates to the care that Methodist gave, and should continue to give, to its patients. Thus, the allegations sound in medical malpractice as contemplated by the LMMA. The execution of *154 an evacuation plan clearly implicates the treatment being provided to the patients both before and during the evacuation and the adequacy or inadequacy of the treatment. In making this evaluation, the medical condition of each patient has to be considered and whether, for example, transfer would result in better treatment or a transport-causing injury to the patient. La. R.S. 40:1299.41 A(8) defines malpractice as including "the handling of a patient, including loading and unloading." See also McKnight v. D & W Health Services, Inc., 02-2552, p. 5 (La.App. 1 Cir. 11/7/03), 873 So.2d 18, 22 (defining "handling" as "the management or having overall responsibility for supervising or directing a patient").
In Williamson v. Hosp. Service Dist. No. 1 of Jefferson, 04-0451 (La.12/1/04), 888 So.2d 782, the wheel on a hospital wheelchair fell off while a patient was seated therein. Hospital personnel had repaired the wheelchair several days preceding the accident and the plaintiff asserted a claim against the hospital for "negligently failing to repair the wheelchair, negligently failing to supervise the repair of the wheelchair, and negligently failing to insure the wheelchair was in proper working condition prior to returning the wheelchair to service." Id. at p. 2, 888 So.2d at 784. The Supreme Court analyzed the case using the six-part inquiry of Coleman, supra, and concluded that the claim fell outside the purview of the LMMA. Id. at pp. 11-15, 888 So.2d at 789-92. How and why the wheelchair collapsed was not related to the medical treatment of the plaintiff. Thus the case is distinguishable from the case at bar because it addresses medical treatment as discussed supra and infra.
We have applied the LMMA's definition of medical malpractice[7] to the allegations set forth in the plaintiffs/respondents' petition as supplemented and amended. We conclude that the claims therein are all medical in nature and fall within the provisions and purview of the LMMA  the plaintiffs/respondents' claims relating to the handling of Ms. LaCoste once admitted to Methodist, the medical treatment she received, the evaluations made of her during her stay in Methodist, and her presentation to the health care provider which determined whether and when she should be evacuated from Methodist.
We also hold that whether the emergency electric-generating equipment, which powered the Methodist equipment, was adequate, as well as the decision to evacuate or not, are within the purview of the LMMA. A failure to have appropriate, adequate, *155 and working back-up power to run Methodist is akin to a failure of a hospital to have necessary medical supplies to treat patients. The underlying issue is the condition of the patient and the treatment provided the patient during and after the natural disaster (force majeure). That is, the former relates to the adequacy of the equipment used to provide care to a patient and the latter relates to the pure care of the patient, both of which require a determination of the fact-sensitive question of to what risks the patient is subject. The questions address themselves to whether Pendleton, through its employees, breached the applicable standard of care for a hospital respecting the best care for the patients when faced with a natural disaster; expert evidence will be required to make the determination. Ultimately, the issue of whether the case is one in malpractice or negligence (tort) must await a trial where the trier of fact may determine the issues. We express no opinion on this issue.
For these reasons, we grant the exception of prematurity and dismiss without prejudice those parts of the plaintiffs/respondents' case dealing with the electrical generating equipment and evacuation, but deny the exception of prematurity on the allegations of intentional tort. We remand the case for further proceedings on the issue of intentional tort.
CERTIORARI GRANTED; REVERSED IN PART; AFFIRMED IN PART; RENDERED IN PART; REMANDED.
McKAY, J., concurs in the result.
LOVE, J., concurs and assigns reasons.
LOVE, J., concurs and assigns reasons.
I respectfully concur in the results. I think the majority's conclusions and factual determinations are premature based on the record before us. The medical review panel and the trier of fact should make the determination as the nature of each claim except those relating to the alleged intentional tort.
NOTES
[1] The Clerk of the Civil District Court for the Parish of Orleans (hereinafter "Clerk") has certified her inability to locate the original record of this case. Therefore, the Clerk allowed the lawyers to "reconstruct" the record. An "unofficial" record was received by this court on or about 19 November 2006. However, on 28 November 2006, the Clerk filed an "official" record with this court that contains an affidavit by Ms. Gwendolyn Allen, Records Department Supervisor for the Clerk, in which she states that she was unable to locate the original court record for this case. In order to reconstruct the record, duplicate documents were retrieved from microfiche and from the Sheriff's office. In addition, attorneys of record were contacted to retrieve documents filed by the parties. We note that the "unofficial" and "official" records are substantially similar, but for one noticeable difference as discussed in note 4 infra.
[2] The plaintiffs/respondents are named and alleged to be Stephen B. LaCoste, individually and as legal representative of Belgarde LaCoste, Neal LaCoste, the estate of Althea LaCoste, Jann L. Raymond, Corlis LaCoste, Linda L. Rogue, Dana L. Barthelemy, and D'Andrea L. Prater.
[3] We take judicial notice of the fact that no mandatory evacuation order was issued by the city of New Orleans until 20 hours before Hurricane Katrina made landfall and that the mandatory evacuation order excluded hospital employees and their patients.
[4] We note that none of the briefs filed by the parties in this court and furnished to the judges of the panel contained a copy of the petition filed by the plaintiffs/respondents with the PCF. However, the "unofficial" record furnished by the Clerk contains a copy of the plaintiffs/respondents' "Petition for Review of Medical Malpractice Claim," which was attached to the PCF's brief in the record. On the other hand, the "official" record from the Clerk contains only the PCF's petition for intervention without plaintiffs/respondents' medical malpractice claim filed with the PCF. The court has no idea which party inserted the medical malpractice claim filed with the PCF into the unofficial record, but notes that it was never filed in the court below and, therefore, should not be in the record, official or otherwise. Regardless, it is undisputed that a claim was filed that militates to the conclusion that the plaintiffs/respondents on some level believe that some portion of their claims sounds in medical malpractice. Without further facts, the court finds those claims that sound in medical malpractice indistinguishable from those that do not.
[5] On 27 September 2006, the PCF filed a petition of intervention in the trial court with a view of filing a brief in this court in opposition to Pendleton's writ application. The petition for review sets forth the identical allegations found in the original petition filed in the trial court.
[6] La. R.S. 40:1299.41, et seq.
[7] "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

La. R.S. 40:1299.41A(8). "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill. La. R.S. 40:1299.41A(7). "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement. La. R.S. 40:1299.41A(9).