969 So.2d 686 (2007)
Carmelita LAFONTA and Pedro Lafonta, Individually and on Behalf of Iola M. Lafonta
v.
HOTARD COACHES, INC. and Crescent City Health Care Center, Inc.
No. 2007-CA-0454.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 2007.
Chester C. Stetfelt, Jr., Charles C. Stetfelt, Jr., a PLC, Metairie, LA, for Plaintiffs/Appellants.
Jeremy D. Goux, Wynne, Goux and Lobello, Attorneys at Law, LLC, Covington, LA, for Crescent City Health Care, Inc.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, and Judge LEON A. CANNIZZARO, JR.).
DENNIS R. BAGNERIS, SR., Judge.
The Appellants, Carmelita and Pedro Lafonta, appeal the judgment of the district court in favor of the Appellee, Crescent City Health Care granting its Exception of Prematurity. We reverse the judgment of the district court and remand for further proceedings.
The Lafontas are the adult children of Iola M. Lafonta. Iola Lafonta was admitted to Crescent City Health Care Center, Inc. (hereinafter "Crescent City") on June 29, 2005. She remained a patient in the nursing home until Hurricane Katrina hit the City of New Orleans.
On or about August 31, 2005, Crescent City hired Hotard Coaches, Inc. to serve as transportation for the nursing home residents. The Hotard bus was to take *687 the residents to Shreveport, Louisiana. Carmelita Lafonta requested that she be able to ride on the bus with her mother, but her request was denied. She alleges that there was no nursing home staff on the bus and that her mother was tied to a seat with her legs hanging into the aisle. Carmelita Lafonta alleges that the bus driver stopped at a truck stop in Sorrento, Louisiana. Carmelita Lafonta caught up with the bus in her personal vehicle at which time she found her mother dead on the bus with her dentures and her eye glasses on the floor of the bus.[1]
Carmelita and Pedro Lafonta filed a Petition for Damages on behalf of their mother against Hotard and Crescent City. The Lafonta's alleged six specific causes of action against the appellants: (1) failing to evacuate decedent before the hurricane's arrival; (2) failing to timely obey a mandatory evacuation order of government authorities; (3) failing to implement a safe and effective evacuation of decedent; (4) failing to have an effective evacuation plan or emergency preparedness plan in place before the hurricane's arrival; (5) failing to timely notify petitioners of the inadequacy or nonexistence of an effective evacuation plan or emergency preparedness plan; and (6) negligently hiring of defendant, Hotard Coaches, Inc., to perform the transport of decedent.
Crescent City filed Peremptory Exceptions of No Cause of Action and Exceptions of Prematurity and Vagueness. Hotard filed an Answer to the Lafonta's Petition for Damages. Judgment was rendered by the district court granting Crescent City's exception of prematurity and dismissing the Lafonta's case without prejudice.
On appeal, the Lafontas assert that the district court erred in finding that their six causes of action arise out of medical malpractice.
The Lafontas maintain that the district court erred in "bundling" all of their causes of action and placing them under medical malpractice which would need to be reviewed by a medical malpractice panel before they could proceed.
Crescent City maintains that they are afforded the protection of the MMA as qualified healthcare providers. Further, Crescent City maintains that the Appellant's have admitted the exact allegations to the LPCF which contradicts the instant argument.
The district court relied on LaCoste v. Methodist Hospital LLC, 2006-CA-1268 (La.App. 4 Cir.2006), 947 So.2d 150 in its Reasons for Judgment finding:
At first blush, the allegations in the present case do not appear to sound in medical malpractice. However, after having reviewed the case law, the court finds that LaCoste is applicable; and, based upon the reasoning in LaCoste, the court finds that plaintiffs' negligence claims do not sound in medical malpractice. For this reason, the court maintains the Exception of Prematurity and dismisses plaintiffs' claims against the defendant without prejudice.
Since the rendering of the district court's judgment, the Supreme Court has reversed this Court's finding and reinstated the judgment of the district court in LaCoste. Just as the district court was bound by our decision in LaCoste, we are now bound by that of the Supreme Court and respectfully rely on the language below:
This court has steadfastly emphasized that the LMMA and its limitations on *688 tort liability for a qualified health care provider apply only to claims "arising from medical malpractice," and that all other tort liability on the part of the qualified health care provider is governed by general tort law. Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315 (finding claim for alleged wrongful transfer from one emergency room to another of a patient whose left arm was later amputated sounded in medical malpractice); Williamson, 04-0451 at p. 5, 888 So.2d at 786. This is so because, as we have oft repeated, the LMMA's limitations on the liability of health care providers were created by special legislation in derogation of the rights of tort victims. Williamson, 04-0451 at p. 5, 888 So.2d at 786; Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992) (finding strict liability for defects in hospital bed that collapsed resulting in injury to patient was not included within definition of medical malpractice under the LMMA). In keeping with this concept, any ambiguity should be resolved in favor of the plaintiff and against finding that the tort alleged sounds in medical malpractice. The limitations of the LMMA, therefore, apply strictly to cases of malpractice as defined in the LMMA. Williamson, 04-0451 at p. 5, 888 So.2d at 786.
The LMMA defines "malpractice" as:
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La.Rev.Stat. 40:1299.41(A)(8).
The LMMA further defines "tort" and "health care" as follows:
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
Stephen B. LaCoste v. Pendelton Methodist Hospital, XXXX-XXXX (La.9/5/07) 966 So.2d 519.
This court in Coleman v. Deno, pp. 17-18, 813 So.2d at 315-16, set forth six factors to assist a court in determining whether a claim sounds in medical malpractice and must first be presented to a medical review panel:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether an incident occurred in the context of a physician-patient relationship, *689 or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
Id.
The Supreme Court concluded:
Accordingly, because the claims need not be submitted to a medical review panel, the district court correctly overruled the defendant's dilatory exception of prematurity. Therefore, the ruling of the court of appeal is reversed, and the ruling of the district court is reinstated. The case is remanded to the district court for further proceedings.
Id.
The Lafonta's alleged that Crescent City failed to evacuate Ms. Iola before the hurricane's arrival; failed to timely obey a mandatory evacuation order of government authorities; failed to implement a safe and effective evacuation of decedent; failed to have an effective evacuation plan or emergency preparedness plan in place before the hurricane's arrival; failed to timely notify petitioners of the inadequacy or nonexistence of an effective evacuation plan or emergency preparedness plan; and negligently hired Hotard Coaches, Inc., to perform the transport of decedent. There is no need to individually address the Lafonta's six allegations; we only need to determine whether, in light of Coleman v. Deno, 01-1517, (La.1/25/02), 813 So.2d 303, a medical review board needs to examine the matter.
The evacuation issues presented by the Lafontas are not "treatment related," therefore we need not go into detail as to whether the acts alleged require expert medical evidence, because they do not.
Although we recognize that the district court relied on this Court's ruling in LaCoste, in light of the recent legal developments, we now find that there was manifest error by the district court.

Decree
For the reasons stated herein, we reverse the judgment of the district court in favor of Crescent City Health Care and remand this matter to the district court for further proceedings.
REVERSED AND REMANDED.
TOBIAS, J., concurs and assigns reasons.
I respectfully concur. I am bound by LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008 (La.9/5/07), 966 So.2d 519, which is, as of the date this concurrence is drafted, not yet a final, definitive judgment of the Louisiana Supreme Court. I still adhere to this court's opinion in LaCoste v. Pendleton Methodist Hosp., L.L.C., 06-1268 (La.App. 4 Cir. 12/6/06), 947 So.2d 150, until such time as the Supreme Court's decision is final. To me, the decision to transport a nursing home resident involves a minute by minute assessment of a resident's medical condition and what was reasonable under the circumstances in the transportation decision. How did the decedent present on the date of the evacuation? That of necessity requires medical expert testimony and sounds within the ambit of medical malpractice.
NOTES
[1] This case has not been decided on the merits in district court, therefore the facts are taken from the allegations in the record and the parties' briefs.