997 So.2d 187 (2008)
Ronald MINEO, Garret Mineo, John Mineo, Jr. and Karl Mineo individually and on behalf of their Deceased Father, John Mineo, Sr.
v.
UNDERWRITERS AT LLOYDS, LONDON; Chateau Living Center, L.L.C.; New Orleans Tours, Inc. and ABC Insurance Company.
No. 2007-CA-0514.
Court of Appeal of Louisiana, Fourth Circuit.
October 22, 2008.
*189 Timothy R. Richardson, USRY, Weeks & Matthews, APLC, New Orleans, LA, for Ronald Mineo, Garrett Mineo, John D. Mineo, Jr., Karl Mineo, Melody Mineo and Catherine Mineo Salzer.
Peter J. Butler, Peter J. Butler, L.L.C., Gretna, LA, and Peter J. Butler, Jr., Michael C. Luquet, Richard G. Passler, Ralph T. Rabalais, Lydia Habliston Toso, Breazeale, Sachse & Wilson, L.L.P., New Orleans, LA, for Defendant/Appellee, Chateau Living Center, L.L.C.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, and Judge ROLAND L. BELSOME).
MICHAEL E. KIRBY, Judge.
Plaintiffs/appellants, the Mineo Family, appeal the trial court's grant of an exception of prematurity in favor of the defendants, Underwriters at Lloyds, London, and Chateau Living Center, L.L.C., et al. Defendants filed the exception upon the grounds that the Louisiana Medical Malpractice Act, ("MMA"), La. R.S. *190 40:1299.41, et seq., requires a prior medical review panel for the plaintiffs' claims. We disagree, finding that LaCoste v. Pendleton Methodist Hospital, L.L.C., XXXX-XXXX (La.9/5/07), 966 So.2d 519, controls the disposition of this matter.

FACTUAL BACKGROUND
The plaintiffs' petitions allege that in August of 2005, eighty-nine year old bed-ridden John D. Mineo, Sr., was a resident of Chateau Living Center Nursing Home. As Hurricane Katrina approached the Louisiana coastline, despite numerous warnings from federal, state and local officials, Chateau Living Center did not evacuate Mr. Mineo and he was forced to remain in the facility while Hurricane Katrina pummeled the area. As the hurricane made landfall, the power inside the nursing home failed. Mr. Mineo was forced to remain inside a building without air-conditioning, clean water or adequate staffing for approximately twenty-four (24) hours until he died on August 30, 2005. The plaintiffs allege that Chateau Living Center was negligent in the following non-exclusive ways by failing to:
(1) remove an 89 year old resident in Mr. Mineo's condition from Chateau Living Center prior to the landfall of Hurricane Katrina;
(2) provide adequate food;
(3) provide adequate medication;
(4) provide adequate medical care;
(5) provide adequate hydration;
(6) provide adequate nursing and administrative staffing and services;
(7) properly assess and reassess Mr. Mineo's condition in his capacity as an 89 year old resident prior to, during and after the landfall of Hurricane Katrina;
(8) develop and modify a care plan to meet Mr. Mineo's needs as an 89 year old resident prior to, during and after the landfall of Hurricane Katrina;
(9) render professional services and appropriate health care treatment to Mr. Mineo after the landfall of Hurricane Katrina, including failure to administer medication and to provide adequate hydration, nutrition and climate control;
(10) properly attend, supervise, and monitor Mr. Mineo following the landfall of Hurricane Katrina;
(11) provide Mr. Mineo the use of an oxygen tank and other respiratory necessities and services;
(12) timely notify New Orleans Tours, Inc. or any other transportation entity of the need to evacuate Mr. Mineo; and
(13) comply with the evacuation notice requirements in the contract between it and New Orleans Tours, Inc.
Chateau Living Center filed an exception of prematurity contending that all of these allegations are medical malpractice claims and that since it is a qualified health care provider they should be dismissed as premature. Chateau contends that the case should be litigated in the collateral medical malpractice action that the plaintiffs filed with the Patient's Compensation Fund. The defendants relied heavily on our opinion in, LaCoste v. Pendleton Methodist Hospital, XXXX-XXXX, (La.App. 4 Cir.12/6/06), 947 So.2d 150.
The plaintiffs opposed the motion contending that the factors set forth by the Louisiana Supreme Court in Coleman v. Deno, XXXX-XXXX (La.1/25/02), 813 So.2d 303 were controlling. The trial court granted Chateau Living Center's exception of prematurity finding that the plaintiff's allegations fell within the scope of the MMA. After the trial court arguments and since the lodging of this appeal, the Louisiana Supreme Court reversed our aforesaid decision in LaCoste v. Pendleton Methodist Hospital, L.L.C., XXXX-XXXX (La.9/5/07), 966 So.2d 519.

*191 ISSUES AND ANALYSIS

The issue presented in this case is whether the plaintiffs' claims in their original and amending petitions sound in medical malpractice, and thus fall within the purview of the MMA, or whether they sound in general negligence.
La.Code of Civil Procedure art. 926 provides for the dilatory exception of prematurity which questions whether the cause of action has matured to the point where it is ripe for judicial determination. Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451, p. 4 (La. 12/1/04), 888 So.2d 782, 785. Under the MMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. La.Rev.Stat. 40:1299.47(A); Williamson, 04-0451 at p. 4, 888 So.2d at 785. The burden of proving prematurity is on the defendant health care provider, who must show that it is entitled to a medical review panel because the allegations fall within the MMA. Williamson, 04-0451 at p. 4, 888 So.2d at 785 (finding alleged negligence of hospital in failing to repair wheelchair and in failing to make sure that wheelchair was in proper working condition did not arise from medical malpractice within the meaning of the MMA).
The MMA is special legislation in derogation of the La. Civil Code. Louisiana jurisprudence is replete with examples that because the MMA operates in derogation of the general tort law, it applies only to claims "arising from medical malpractice," and to no other types of tort liability. LaCoste, supra, XXXX-XXXX at p. 6, 966 So.2d at 524, citing, Coleman v. Deno, XXXX-XXXX, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315 (finding claim for alleged wrongful transfer from one emergency room to another of a patient whose left arm was later amputated sounded in medical malpractice); Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992) (finding strict liability for defects in hospital bed that collapsed resulting in injury to patient was not included within the definition of medical malpractice under the MMA). Thus, the plaintiff benefits from any ambiguity as to whether or not the alleged tort sounds in medical malpractice.
The LMMA defines "malpractice" as:
Any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La.Rev.Stat. 40:1299.41(A)(8).
The LMMA further defines "tort" and "health care" as follows:
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and *192 diligence, along with his best judgment, in the application of his skill.
La.Rev.Stat. 40:1299.41(A)(7) (emphasis added).
"Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
La.Rev.Stat. 40:1299.41(A)(9).
The Supreme Court in Coleman v. Deno, pp. 17-18, 813 So.2d at 315-16, set forth six factors to assist a court in determining whether a claim sounds in medical malpractice and thus must first be presented to a medical review panel:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
We enumerated the plaintiffs' thirteen (13) allegations of negligence supra. Of the thirteen, certain allegations can be dismissed summarily as clearly falling within the scope of the MMA, to wit: numbers 3, 4, 7, 9, and 11.

ALLEGATIONS 3 AND 4
These allegations of negligence deal with the failure to provide adequate medication and medical care. We find they fall squarely within the ambit of La. R.S. 40:1299.41(A)(8), specifically the language "health care or professional services rendered, or which should have been rendered, by a health care provider ..." It can be argued that while prescribing medication is clearly a professional service, administering medication is not because anyone can give someone medicine to ingest. Thus, since anyone, not solely a professional, can administer medicine to an elderly person, any aspect of the allegation that deals with prescribing the medication falls within the MMA, but the mere administering of the medication does not.
Applying the Coleman Court factors the first question is whether the wrong or failure to provide/administer medication is "treatment related" or caused by dereliction of professional skill. The ingestion of medication is treatment related, but the failure to provide/administer medications in this case does not stem from a dereliction of professional skill, but rather the circumstances surrounding the hurricane and its effects.
The second applied Coleman factor is whether the failure to provide medication requires expert medical evidence to determine whether the appropriate standard of care was breached. This factor weighs in favor of the application of the MMA, because if a certain prescription had not been administered to Mr. Mineo and the failure caused his death, then the determination of the cause of his death or injury due to medication would require expert testimony.
The third applied Coleman factor is whether the failure to provide medication involved assessment of the patient's condition. *193 This factor weighs in favor of the plaintiffs because an 89 year old man more likely than not will be on a general medication regimen. Moreover, if Mr. Mineo was not, the burden is on the defendants, who have the medical records, to show that he was not on such a regimen or that Mr. Mineo's condition required constant assessment.
The fourth applied Coleman factor is the failure to provide medication occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. Because Chateau employed nurses, and because nurses are licensed to administer medication, then the providing of medication appears to fall within the scope of activities.
The fifth applied factor is whether Mr. Mineo's injury/death would have occurred if he had not sought treatment. This factor on its face is more directed to normal circumstances. Given the unusual circumstances here the inquiry is difficult. Clearly Mr. Mineo was placed in Chateau because he could not care for himself. Would he have died in the inundation due to the failure of the levees or could he have survived the resulting chaos? These queries are not proper under this set of circumstances, because clearly the duty to evacuate and similar duties do not meet the definition of malpractice. Nevertheless, focusing on the more narrow allegation of failure to provide medication, it appears more evidence would be necessary to make such a determination.
Finally, the sixth factor is whether the tort alleged was intentional. The petition states simply that defendants failed to evacuate Mr. Mineo. This could have been intentional, but greater discovery and/or a trial may find that these acts were unintentional. There is no way we can make such a determination at this stage of the proceedings. Thus, this factor weighs against the defendant exceptor.
While it can be argued that any liability due to failure to administer medication to Mr. Mineo, falls outside of the scope of the term "malpractice" as defined by La. R.S. 40:1299.41(A)(8) [specifically the reference to "professional services"], we interpret La. R.S. 40:1299.41(A)(7) defining "health care" as encompassing the providing of medication. Therefore, the trial court was correct in granting the exception of prematurity as regards allegations number three (3) and four (4).
Logic requires a similar result for allegations number seven (7), nine (9), and eleven (11) as well as the first part of allegation number six (6), that deals with the providing of nursing staff.
Noteworthy is the fact that while we have in the record a copy of the Hurricane Emergency Transportation Agreement between Chateau and New Orleans Tours, Inc., we have not found a copy of the contract between Mr. Mineo and Chateau. This contract must contain some of the obligations of care and duty that Chateau assumed vis-à-vis Mr. Mineo. Such a contract would delineate if Chateau had assumed obligations to provide food, hydration, administrative staffing and non-professional services, as well as any duties to care, supervise or evacuate.
Insofar as allegations numbered one (1), two (2), five (5), second part of six, eight (8), ten (10), twelve (12), and thirteen (13) are concerned, the defendants/exceptors have not met their burden of proof.
For example as regards allegation number one (1), the failure to remove Mr. Mineo from the Chateau Living Center prior to Hurricane Katrina was not treatment related because everyone was asked to evacuate, not just the sick and elderly. Clearly no expert medical evidence is required *194 to determine that people who did not evacuate for the Hurricane would suffer adverse consequences, such as lack of food and water, which form the basis for allegations number two (2) and five (5). Such privations occurred in the hurricane affected area even among the general population, who were not seeking medical attention or treatment, or any who suffered any other prior health problems.
Allegation number six (6) asserts a failure to provide adequate nursing and administrative staffing and services. We deem the first part of this allegation as regards provision of nursing services to fall under the MMA because of the definition of malpractice in La. R.S. 40:1299.41(A)(8), which includes "any unintentional tort ... based on health care or professional services rendered." Since nursing is a professional service within health care and we find no allegations of intentional tort within the plaintiffs' petition and subsequent amendments, the first part of allegation number six (6) falls under the MMA, which precludes the rights granted to a victim under our Civil Code.[1]
Insofar as the latter part of allegation number six (6), that concerns provision of administrative staffing and services during Katrina, the question hinges on whether Chateau has a legal duty to care for a person under their "garde," outside of the mere health care regime. One may also ask whether or not the evacuation order issued by the local authorities created a duty on behalf of Chateau. The same independent legal duty question needs be asked as concerns allegations numbers eight (8) and ten (10), both of which allege a duty of care similar to that of a parent for a child, albeit in this case an elderly person. The resolution of such questions require a review of the contract that governed the relationship between Chateau and Mr. Mineo. Given this record, Chateau has not met its burden of proof. Moreover, further discovery may shed light on and make for a more in depth analysis of the Coleman factors.
Insofar as allegations number twelve (12), failure to timely notify New Orleans Tours, Inc. or any other transportation entity of the need to evacuate Mr. Mineo; and thirteen (13), failure to comply with the evacuation notice requirements in the contract between Chateau and New Orleans Tours, Inc., we find that they are not subject to dismissal for prematurity based upon this record.
Therefore, we reverse the granting of the exception of prematurity as regards numbered allegations one (1), two (2), five (5), second part of six (6.2), eight (8), ten (10), twelve (12) and thirteen (13), and affirm as regards numbers three (3), four (4), first part of six (6.1), seven (7), nine (9), and eleven (11).
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] Often times the jurisprudence refers to these rights as provided by tort law.