EDWIN A. LOMBARD, Judge.
| j Woodland Village, L.L.C., defendant in this medical malpractice and wrongful death action, and the Louisiana Patient’s Compensation Fund, as appellant — inter-venor, appeal to this Court the jury trial’s finding of wrongful death and awarding of. damages to plaintiffs. Woodland Village also appeals the judgment of the trial court denying their motion for judgment notwithstanding the verdict, motion for new trial, and motion for remittitur, all of which were filed following the rendering of the jury verdict. Plaintiffs, Leslie Braud, Rudolph Braud Jr., Marty Braud, and Kelly Braud Mercadel, cross-appeal the decision of the trial court to reduce the damages award to the statutory “cap” of $500,000.
For the reasons provided below, we hold that the trial court committed legal error in not including jury interrogatories that *748 would allow the jury to consider the possibility of the establishment of a separate loss of chance of survival claim, that which would be distinguishable from a claim of wrongful death. Therefore, we reverse the judgment on jury verdict, and remand the matter for a new trial with proceedings consistent to this opinion.

Factual History

| gRudolph Braud, Sr. was a 64 year old man diagnosed with Alzheimer’s disease and Pick’s Dementia, a very rare form of frontal-lobe dementia that, in addition to general memory loss, causes anti-social and inappropriate behavior, over-eating, and abrupt mood changes. Mr. Braud began showing signs of dementia in his late fifties, in approximately 1998. According to medical experts testifying at trial, the life expectancy range of a person diagnosed with Pick’s Dementia was approximately five to eight years.
Eventually the Braud family was unable to care for Mr. Braud at their home, and in December 2002 Mr. Braud was placed in the home of a caregiver. However, this initial caregiver’s license and certification materials were not in order, and the Braud family decided to move Mr. Braud to Woodland Village Nursing and Rehabilitation Center in New Orleans.
Mr. Braud was admitted to Woodland Village on October 1, 2008. Prior to admission, Mr. Braud was taking one medication for treating dementia, Reminyl at 8 milligrams. Mr. Braud’s treating physician at Woodland Village was Charles Si-monson, M.D., a former director of Woodland Village who was a private physician at the time he began treating Mr. Braud. According to trial testimony, Mr. Braud began displaying some aggression and hostility soon upon his arrival at Woodland Village. Dr. Simonson began prescribing additional “anti-psychotic” medication as part of his treatment of Mr. Braud’s dementia. Throughout his eleven months, Mr. Braud exhibited anti-social behaviors and displayed other unfortunate symptoms of extreme dementia beyond his control. The trial court record reveals ample medical notes taken by the doctor, nurses, and other caretakers for Mr. Braud.
bin late August 2004, Mr. Braud’s wife notified Dr. Simonson that he had become quite “zombie-like,” and that he was spending an inordinate amount of time sleeping. Dr. Simonson ordered checkups on Mr. Braud every 15 minutes, to check for any signs of distress or discomfort. Ruth Umfrey, the licensed Practical Nurse on duty on the night of Mr. Braud’s death, testified that these 15 minutes checks were to be performed by a nursing assistant walking by each patient’s room, and they did not require her to enter into the room to check for vital signs, but to only view through the door outward signs of distress, such as falling out of bed or crying.
On September 2, 2004, at 10:04 p.m., Mr. Braud was discovered by the Woodland Village staff to be unresponsive. There was testimonial evidence showing that the 15 minute checks were either not performed, or that Mr. Braud experienced a myocardial infarction (heart attack) long before any nurses had realized. Paramedics were called, but Mr. Braud was pronounced dead shortly thereafter. Ryan Hagaman, the paramedic called to the scene, testified at trial that did not know if CPR had ever been started, and that Mr. Braud’s appearance and coldness of body indicated that he had been expired for at least 60 minutes. By 10:17 p.m., lividity, post-mortem body changes such as the pooling of blood and purple hue of skin, had set in, leading one expert to believe that Mr. Braud had been deceased for over an hour. It was largely agreed upon by all testifying experts that Mr. Braud had ex *749 pired as a result of an acute myocardial infarction, or heart attack.

Procedural History

The Braud family first filed a complaint with the state Division of Administration— Medical Review Panel, concerning Mr. Braud’s death against Dr. |,(Simonson and Woodland Village, alleging that Mr. Braud was overly-medicated during his time at Woodland Village, and that a nurse at Woodland Village failed to perform CPR on him. The panel, consisting of three medical doctors, concluded that Dr. Simon-son’s evaluation and treatment of Mr. Braud, including his use of medications, “was appropriate and within the standard of care.” The panel also found there to be a material issue of fact as to whether or not CPR was ever attempted by the Woodland Village staff during the final events surrounding Mr. Braud’s death.
Plaintiffs then filed this medical malpractice / wrongful death action against Dr. Simonson, Woodland Village, and the Louisiana Patient’s Compensation Fund (“PCF”), alleging negligence in failure to formulate an appropriate plan of care, improper administration of chemical restraints, and failure to attempt to immediately resuscitate, among other alleged acts of negligence.
Following a six-day jury trial, following the closing of evidence, a jury verdict was rendered finding Woodland Village negligent in their care for Mr. Braud. Dr. Simonson was not found liable by the jury. The jury awarded damages in the amount of $1,650,000 for wrongful death damages: $900,000 to Mr. Braud’s widow and $250,000 each to Mr. Braud’s three adult children. On July 7, 2009, the trial court then signed and entered a Judgment on Jury Verdict confirming in writing the jury’s verdict on liability and the award of $1,650,000.
Following the rendering of the jury verdict, appellant Woodland Village filed a Motion for Judgment Notwithstanding the Verdict, or in the alternative, New Trial, or Remittitur. Woodland Village argued that all of the testifying experts at trial concluded that no harm was caused to Mr. Braud for alleged medication errors. Appellant also claimed that plaintiffs did not present any ^evidence that Mr. Braud would have been able to have been resuscitated. Woodland Village also argued that the jury award was excessive and incorrectly beyond the statutory cap of $500,000 for members of the Louisiana Patient’s Compensation Fund, set forth in La.Rev. Stat. § 40:1299.42.
Most importantly, appellant further argued that plaintiff did not present any evidence to establish that Woodland Village caused the heart attack which led to Mr. Braud being found unresponsive. Woodland Village argued that plaintiffs failed to establish by a preponderance of the evidence that Woodland Village caused or contributed to Mr. Braud’s death, and that at a minimum, plaintiffs may have only established evidence for a loss of chance of survival claim. The district court denied Woodland Village’s motions for judgment notwithstanding the verdict, new trial, and remittitur, but reduced the plaintiffs’ award to $500,000. Woodland Village then timely appealed to this Court, and plaintiffs cross-appeal the trial court’s subsequent judgment reducing the jury’s damage to $500,000.

Assignments of Error

Defendant/Appellant Woodland Village asserts that the jury erred in finding Woodland Village liable for wrongful death. They argue that the plaintiffs presented no evidence which would establish by a preponderance of the evidence that Woodland Village caused or contributed to Mr. Braud’s fatal heart attack. Appellant *750 argues that the trial court erred in not granting a new trial on the grounds that plaintiffs, at best, established only a loss of chance of survival, not wrongful death, and that the jury interrogatories and final jury verdict did not address a claim for loss of chance of survival.
| (Pause of Heart Attack, Loss of Chance of Survival
DefendanVAppellant Woodland Village first argues that the jury erred in concluding that it was negligent in medical malpractice for the wrongful death of Rudolph Braud, Sr. In order for a plaintiff to prevail on a medical malpractice claim, the Louisiana Legislature requires a plaintiff to prove, by a preponderance of the evidence, the three elements set forth in La. Rev.Stat. § 9:2794(A), provided below:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Beaucoudray v. Walsh, 2007-0818, p. 12 (La.App. 4 Cir. 3/12/09), 9 So.3d 916, 923. The plaintiffs burden of proof in a medical malpractice case has been previously set forth by the Louisiana Supreme Court:
“[T]he plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician’s alleged negligence and the plaintiffs injuries resulting therefrom.”
Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94) 643 So.2d 1228, 1232; Beaucoudray, supra, 9 So.3d at 923. Allegations against a nursing home 17for failure to provide adequate medication and medical care fit within the ambit of medical malpractice actions under La.Rev.Stat. § 9:2794 and other relevant Louisiana medical malpractice statutes. Mineo v. Underwriters at Lloyds, London, 2007-0514, p. 6 (La.App. 4 Cir. 10/22/08), 997 So.2d 187, 192.
Medical malpractice claims are subject to the general rules of proof applicable to any negligence action: the plaintiff must prove a standard of care, a breach of the standard, causation, and damages. Whether alleged malpractice constitutes negligence is a question for the jury. Stamps v. Dunham, 2007-0095, p. 4 (La.App. 4 Cir. 9/19/07), 968 So.2d 739, 743. The Louisiana Supreme Court has provided a two-prong test for the reversal of a fact-finder’s determinations: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993), citing *751 Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Secondly, Woodland Village argues that the district court erred in preventing the jury from considering a claim of loss of chance of survival, which defendant argues is a separate and distinguishable claim from that of wrongful death in medical malpractice. The loss of chance of survival is a distinct compensable injury caused by a defendant’s negligence, distinguishable from the loss of life in wrongful death cases. Smith v. State of Louisiana, Dept. of Health and Hospitals, 95-0038 (La.6/25/96), 676 So.2d 543, 547. There is no variation in the burden of proof in a claim for loss of chance of survival. Id. Thus, in a medical malpractice case seeking damages for the loss of a less than even chance of survival because of negligent treatment of a pre-existing condition, the plaintiff must prove by a | ^preponderance of the evidence that the tort victim had a chance of survival at the time of the professional negligence, and that the tortfeasor’s action or inaction deprived the victim of all or part of that chance, and must further prove the value of the lost chance. Id.
The plaintiff need not prove that the patient would have survived but for the defendant’s malpractice; however, the plaintiff must establish by a preponderance of the evidence that he or she had a chance for survival, and that this chance was lost due to the defendant’s negligence. Hebert v. Parker, 2000-0686, p. 12 (La.App. 4 Cir. 5/31/01), 796 So.2d 19, 27; see also Snia v. Medical Center of New Orleans, 93-2367 (La.App. 4 Cir. 5/26/94), 637 So.2d 1290, 1292. The fact-finder must focus on the loss of chance of survival as a distinct compensable injury, and value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages. Smith v. State of Louisiana, Dept. of Health and Hospitals, supra, 676 So.2d at 547. “The lost chance of survival in professional malpractice cases has a value in and of itself that is different from the value of a wrongful death or survival claim.” Id., 676 So.2d at 548.
As to the jury’s findings of fact that Woodland Village caused or contributed to Mr. Braud’s death, this Court finds that the inherent failure of the district court to provide proper jury instructions as to lost chance of survival led to a finding not supported by a reasonable factual basis. In essence, the record clearly does not support a finding that Woodland Village’s actions or inactions caused Mr. Braud’s fatal heart attack.
While the plaintiffs may have presented evidence that Woodland Village employees may have had problems related to the dispensing of medication or | recording notes on Mr. Braud’s progress, there was no evidence presented to the jury that showed that these actions caused Mr. Braud’s fatal heart attack. Dr. Simonson, when questioned about any relation between Mr. Braud’s anti-psychotic medications and his subsequent heart attack, testified that “I don’t think ... there was any medical literature at all that suggested that these might cause a heart attack.” Dr. Simonson further denied that any over-sedation caused by the anti-psychotic medications prescribed to Mr. Braud could cause a heart attack, or even an increase in heart rate.
Dr. Timothy Hammond, an internal medicine physician and the plaintiffs’ expert in nursing home care, initially stated he did not think Mr. Braud experienced over-sedation, and that he does not believe sedation caused his heart attack. Dr. Hammond did say, however, “over-sedation” leads to “decondition,” and that over-sedation may lead to an early heart attack. *752 On cross-examination, though, Dr. Hammond clearly stated that he saw no signs of over-sedation in Mr. Braud. Dr. Hammond also testified that Woodland Village’s failure to stop administering Ability, an anti-psychotic medication, until three days after Dr. Simonson’s orders to do so, did not cause Mr. Braud’s heart attack, and did not lead to his death. Dr. Hammond refuted any testimony that may have indicated that Mr. Braud may have been over-sedated. He further testified that Mr. Braud’s Ambien medication had nothing to do with his death. Dr. Hammond essentially, on cross-examination, stated his belief that Mr. Braud’s heart attack was not caused by over-sedation, and was not caused by medication.
Dr. James Teebe, a physician who was on the medical review panel for this case, testified that the combination of medications Mr. Braud was on, and in the doses he was given, did not contribute to his death. He further opined that Mr. | inBraud’s fatal myocardial infarction was a result of his Pick’s Dementia and eating disorder derived therefrom. When asked to relate Mr. Braud’s heart attack to any possible over-sedation from medication, Dr. Teebe stated that “[o]nce again I’m not aware of any science that shows sedation as increase in risk factor for myocardial infarction.” More specifically, Dr. Teebe also testified that any changes in sedation or medication in the week prior to Mr. Braud’s death would not have caused his heart attack.
Because there was no testimony offered at trial that displayed any causal connection between Mr. Braud’s medication, or the note-taking habits of Woodland Village employees, there is no reasonable basis in which to conclude that Woodland Village caused or contributed to Mr. Braud’s death. In essence, there is no injury that Mr. Braud suffered that he would not have otherwise suffered. La.Rev.Stat. 9:2794(A)(3). All of the testifying medical experts at trial conclusively agreed that Mr. Braud’s heart attack was not brought on by the medication he received, or his level of sedation, and that his fatal myocardial infarction was the result of his eating disorder caused by Pick’s Dementia. Though the plaintiffs presented at trial substantial and reasonable evidence relating to Woodland Village’s breach of standard of care in administering CPR to Mr. Braud on the night of his death, this evidence can, at best, only establish a claim for a loss of chance of survival.
Plaintiffs presented credible testimony at trial that the actions of Woodland Village employees on the night of Mr. Braud’s death fell below the established standard of care, and that their failure to timely perform CPR on Mr. Braud denied him a chance of survival from his heart attack. First, while Dr. Simonson had ordered routine check-ups on Mr. Braud every 15-minutes, trial testimony |! suggested that such check-ups were not performed after 9:00 p.m., or that they were at least performed insufficiently. Shortly after 10:00 p.m., a nurse discovered Mr. Braud to be unresponsive. Dr. Simonson, though he was not present on the night of Mr. Braud’s death, testified as to his understanding of the surrounding events:
Mr. Braud had an order to be observed for safety every 15 minutes. Unfortunately that did not happen for 45 minutes or longer and he was found unrousable at that point of time. There is some confusion in the chart there is one notation CPR was started, resuscitation was started 4 minutes passed 10, with the paramedics coming 30 minutes later. There is no resuscitation going on and no oxygen being given and suddenly he’s not brought back to life and he dies.
*753 Furthermore, Candace Andrus, a representative from the Department of Health and Hospitals, received a report stating that CPR was not performed on Mr. Braud, and that the nurse on duty was terminated as a result of the failure to initiate CPR.
The nurse who was terminated, Ruth Umfrey, also testified at trial, and stated that there was a 45 minute period of time in which no one checked on Mr. Braud. When she did discover him, he was cold to the touch, had no respiration, and had no pulse. It is from the testimony of these individuals that we can surmise that plaintiffs presented reasonable evidence to establish that Woodland Village’s negligence prevented Mr. Braud from the opportunity to survive his heart attack. But it is equally clear that no actions or inactions of Woodland Village caused his fatal myocardial infarction.

Jury Interrogatories

In a trial by jury, the trial court has a duty to instruct the jury only on the law that pertains to the evidence adduced in that particular case. Barnett v. New Orleans Public Service Inc., 489 So.2d 452, 455 (La.App. 4 Cir.1986); Hebert v. Parker, supra, p. 7, 796 So.2d at 25. To accomplish this duty, the trial court must both require that the jury consider only the correct law and avoid confusing the jury. Guilfore v. D.H. Holmes Co., Ltd., 93-0076 (La.App. 4 Cir. 1/13/94), 631 So.2d 491, 498, writ denied, 94-0376 (La. 4/4/94), 635 So.2d 1125. When the jury instructions contain plain fundamental error, where the legal error is seen to have interdicted the fact-finding process, a de novo review of the record is required. Hebert v. Parker, supra, pp. 7-8, 796 So.2d at 25.
In this matter, this Court finds that the district court committed legal error in not presenting jury instructions and correct law as to the separate and distinguishable claim for the loss of chance of survival. Prior to trial, defendant Woodland Village proposed jury interrogatories that would have addressed the clearly evident notion that the case may not rise to the level of wrongful death:
PROPOSED JURY CHARGE NO. 13:
In a medical malpractice case seeking damages for the loss of a less-than-even chance of survival because of negligent treatment of a pre-existing condition, the plaintiff must prove by a preponderance of the evidence that the tort victim had a chance of survival at the time of the professional negligence and that the tortfeasor’s action or inaction deprived the victim of all or part of that chance, and must further prove the value of the lost chance, which is the only item of damages at issue in such a case. Alphonse v. Acadian Ambulance Services, Inc., 2002-0773 (La.App. 1 Cir. 3/28/03) 844 So.2d 294, 301; Smith v. State, Dep’t of Health and Hosps., 95-0038 at p. 6, 676 So.2d at 547.
We believe the district court committed legal error in failing to allow the jury to consider what clearly seems to be a case concerning the loss of chance of survival. Following the trial and rendering of verdict, Woodland Village re-urged this notion in their motion for new trial. The district court erred in not allowing the jury to consider the loss of chance of survival under the guidance of Smith, and it should have granted a new trial on these grounds.

11SConclusion

On remand, the district court must include in its jury interrogatories the opportunity to consider a loss of chance of survival claim as envisioned by the Louisiana Supreme Court in Smith. The district court committed clear legal error in failing to allow the jury to quantify potential damage awards as to this separate and distin *754 guishable claim. As a result, the fact-finding processes of the jury were clearly and wrongfully affected. Jones v. Peyton Place, Inc., 95-0574 (La.App. 4 Cir. 5/22/96), 675 So.2d 754. For the reasons provided above, the plaintiffs did not present any evidence that the actions of Woodland Village caused or contributed to Mr. Braud’s heart attack. At best, the evidence on record can only suggest the plaintiffs may have a right to recovery as a result of Mr. Braud’s lost chance of survival. Because we remand the matter for a new trial, a discussion of the plaintiffs’ cross-appeal to restore the original jury damage award is not necessary.

Decree

The jury verdict in favor of plaintiffs for finding wrongful death liability on the part of Woodland Village is reversed, and the matter is remanded to the district court for further proceedings consistent with this opinion.
REVERSED; REMANDED FOR NEW TRIAL.
MURRAY, J., Concurs with reasons.