GARRETT, J.
IjThe plaintiffs, Ryan Haygood, DDS, and Haygood Dental Care, LLC, appeal from trial court rulings sustaining exceptions of prematurity filed by several of the defendants, C. Barry Ogden, Camp Morrison, Karen Moorhead, and Dana Glorioso. For the following reasons, we reverse the trial court judgments and remand the matters to the trial court for further proceedings.
FACTS
Dr. Haygood established a dental practice, Haygood Dental Care, LLC, in Shreveport in 2005.[1] In 2006, the Louisiana State Dental Board (“Dental Board”) began receiving complaints regarding the *1209 treatment plans recommended and dental care provided by Dr. Haygood. The Dental Board instituted proceedings against Dr. Haygood and ultimately revoked his license to practice in Louisiana. Dr. Hay-good appealed that decision to the district court for Orleans Parish and ultimately, to the Louisiana Fourth Circuit Court of Appeal.
In September 2011, while the appeal of the Dental Board decision was pending, Dr. Haygood and his dental practice (hereinafter collectively referred to as “Hay-good”) filed the present suit in Caddo Parish against Dr. Ross H. Dies; Ross H. Dies, DDS, J. Cody Cowen, DDS, and Benjamin A. Beach, DDS, a Professional Dental Limited Liability Company; C. Barry Ogden; Camp Morrison; Karen Moorhead; and Dana Glorioso. Ogden was the executive director of the Dental Board at the time the complaints against Haygood were made. Morrison was a private investigator working for the | ¡¿Dental Board. Morrison enlisted the aid of Moor-head and Glorioso, dental assistants employed by other dentists, to go to Hay-good’s office posing as patients. Dr. Ross Dies was a local dentist and a competitor of Haygood who served as an expert for the Dental Board in this matter.
Haygood alleged that all of the defendants acted in concert to commit unfair trade practices, defamation, and unlawful and malicious acts against him and his practice. Haygood claimed that the defendants conspired to deprive him of good standing in the community. He asserted that the Dental Board began an investigation, but it exceeded its lawful duty, violated his due process rights, participants lost their neutrality, adjudicatory and prosecu-torial roles were mixed, and participants in the investigation violated their duties of trust and confidentiality. Haygood alleged financial loss, loss of reputation, embarrassment, humiliation, worry, and deprivation of the opportunity to practice in his hometown of Shreveport/Bossier. Hay-good sought monetary damages, including attorney fees, against the defendants and prayed for a jury trial.
In the petition, Haygood alleged that he embarked on a successful publicity campaign to grow his business. Haygood claimed that as his business grew, competing dentists lost patients. At that time, according to Haygood, false complaints were filed with various taxing authorities and anonymous Internet postings were made with false information about the practice. There were also complaints that Haygood was diagnosing and recommending unnecessary periodontal work. Hay-good maintains that | ¡¡these complaints were encouraged, if not directly solicited, by his competitors.
Haygood asserted that Ogden, the executive director of the Dental Board, and Morrison, the investigator for the Dental Board, designated Dr. Dies as an expert in the matter and sent him records for evaluation of the complaints against Haygood. Haygood claimed that Dr. Dies was a direct competitor and had developed a strong personal dislike and profound animosity toward Haygood. According to Haygood, the evaluations by Dr. Dies were filled with inaccuracies, falsehoods, exaggerations, and improper assumptions.
In addition to the complaint issued by the Dental Board against Haygood, two of Haygood’s hygienists were also charged. Haygood claimed that one of the hygienists eventually went to work for Dr. Dies and he offered her immunity for changing her testimony and testifying against Hay-good. When the hygienist went to work for another dentist, the plaintiffs allege that Dr. Dies encouraged the new dentist/employer to “probe around about Hay-good.” Haygood urged that one of Dr. *1210 Dies’ partners received confidential information regarding the investigation.
Haygood asserted that in 2008, while the Dental Board investigation was being conducted, Dr. Dies began surreptitiously to seek to buy Haygood’s practice. Haygood alleged that Dr. Dies contacted a business broker and obtained highly confidential information pertaining to the practice.
^According to Haygood, Morrison enlisted the aid of Moorhead and Glorioso to go to Haygood’s office and pose as patients. Haygood claimed that they were acting as private investigators without having a license to do so, in contravention of La. R.S. 37:3520.[2] In an amended petition, Hay-good alleged that Moorhead and Glorioso knowingly and intentionally agreed to act in concert with other defendants to ensure, illegally, that the Dental Board’s investigation produced false evidence of misconduct by Haygood so that the Dental Board would make findings adverse as to him. He asserted that Moorhead and Glorioso made false and defamatory statements regarding the plaintiffs, intentionally presented false symptoms and histories to Haygood, and knowingly participated in and contributed to conversations with co-conspirators that breached the confidentiality of the Dental Board’s investigation and proceedings.
After a formal hearing, the Dental Board revoked Haygood’s license to practice dentistry. It issued a decision finding that he engaged in conduct intended to deceive or defraud the public by fraudulently diagnosing |Bperiodontal disease and other dental conditions, deceived individuals regarding the necessity of treatment, improperly offered discounts in exchange for patient referrals, and failed to satisfy the prevailing accepted standard of dental practice. See Haygood v. Louisiana State Bd. of Dentistry, 2011-1327 (La.App. 4th Cir.9/26/12), 101 So.3d 90, writ denied, 2012-2333 (La.12/14/12), 104 So.3d 445. Haygood appealed that decision to Orleans District Court in accordance with La. R.S. 37:786 and then to the Louisiana Fourth Circuit Court of Appeal. While all of these processes were pending, this matter was proceeding in district court in Caddo Parish.
EXCEPTIONS
In response to Haygood’s allegations in this suit, Ogden filed exceptions of prematurity and Us pendens in December 2011. He urged that the plaintiffs filed this suit in response to a decision by the Dental Board and the decision was currently the subject of multiple appeals to the civil district court for Orleans Parish and the fourth circuit. Ogden stated that the appeal and the current lawsuit center on the same operative facts and occurrences, i.e., whether the actions or omissions on the part of the defendants contributed to or resulted in the Dental Board’s decision against Haygood and whether that decision should be reversed. Ogden contended that, because administrative remedies had not been exhausted, the plaintiffs’ *1211 claims should be dismissed as premature because they were not ripe for adjudication.
| (¡After a hearing on January 19, 2012, the trial court made rulings on numerous exceptions and motions filed by the various parties.[3] The trial court at first indicated that it did not believe that the suit was premature, but suggested that Haygood should amend the petition. The trial court deferred ruling on Ogden’s exception of prematurity. The exception was again argued on April 16, 2012. In court, the trial court indicated that it thought that certain parts might be premature, but not all. The trial court partially sustained the exception of prematurity as to Ogden, “limited to the causes of action that derived from the administrative hearing that are on appeal at this time.” The court candidly acknowledged that it “struggled” with the decision. Even though the trial court seemed to limit its ruling, the judgment that was ultimately signed on May 16, 2012, dismissed all claims against Ogden. The trial court judgment stated:
Pursuant to the January 19, 2012, hearing, this Court deferred ruling on the “Exception of Prematurity on Behalf of Defendant C. Barry Ogden” filed December 6, 2011, and invited Plaintiffs’ Counsel to amend and/or supplement the original “Petition for Damages” filed September 26, 2011, in order to address this Court’s concerns; said concerns included the clarity with respect to each and every claim by the Plaintiffs against each Defendant, including C. BARRY OGDEN, whether or not deriving from the administrative proceedings by the Louisiana State Board of Dentistry.
During the March 13, 2012, hearing, Plaintiffs’ Counsel informed this Court that he had not amended and/or supplemented the original “Petition For Damages” filed September 26, 2011.
At the April 16, 2012, hearing, this Court considered no specific claims asserted by Plaintiffs which did not derive from the administrative proceedings by the Louisiana State Board of Dentistry.
17WHEREFOBE,
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the “Exception of Prematurity on Behalf of Defendant C. Barry Ogden” filed December 6, 2011, is granted and all related claims of Plaintiffs, RYAN HAY-GOOD and HAYGOOD DENTAL CARE, LLC, against Defendant, C. BARRY OGDEN, are dismissed at Plaintiffs’ cost.
The record reflects that on March 22, 2012, the plaintiffs had filed a “First Supplemental and Amended Petition for Damages.” This pleading was not mentioned in the judgment that was signed on May 16, 2012. This pleading included additional allegations pertaining to alleged misconduct, criminal activity, fabrication of false symptoms, and breaches of confidentiality.
On March 30, 2012, Morrison, Moor-head, and Glorioso filed numerous exceptions and motions including an exception of prematurity. They adopted by reference the exceptions previously filed by Ogden in December 2011. After a hearing on May 30, 2012, in open court, the trial court sustained their exception of prematurity. In written reasons for judgment issued on September 27, 2012, the trial court made several findings of facts. The trial court noted that, “The decision of the LSDB is *1212 currently on review before the Louisiana Court of Appeal, Fourth Circuit.” The trial court also found that:
Most, if not all, of Plaintiffs’ claims arose in whole or in part from the alleged manner the complaints were made to the LSDB; complaints were investigated by the LSDB; and/or the consequences resulting from the manner the LSDB addressed and ultimately decided said complaints.
The trial court went on to state:
Rln the above-captioned case, this Court opines that many of the substantial and necessary facts are not ripe or final for this Court to make its determination. Various factual allegations made by Plaintiffs are currently subject to appellate review, therefore, the consequences of the findings and decision of the Louisiana State Dentistry Board are not yet ripe or final.
This Court has concerns; said concerns include the clarity with respect to each and every claim by the Plaintiffs against each Defendant, including Camp Morrison, Karen Moorhead, and Dana Glorioso, as to whether or not said claims derive from the administrative proceedings by the Louisiana State Board of Dentistry. Nevertheless, Plaintiffs’ factual claims should become ripe or final after all appellant [sic] reviews have been completed.
The plaintiffs appealed the trial court judgments sustaining the exceptions of prematurity as to Ogden and as to Morrison, Moorhead, and Glorioso. This court, on its own motion, consolidated the appeals.
Although the reasons for the two trial court rulings were somewhat different, it appears that the basis for the rulings was that the matter would not be ripe or mature until the pending appellate review provided for under La. R.S. 87:786 and La. R.S. 49:965 was completed. It also appears that the trial court contemplated that a definitive answer would be forthcoming in the near future.[4]
While the present suit was mired in exceptions at the trial court, Haygood’s appeal from the revocation of his license was concluded. In September 2012, the fourth circuit vacated the Dental Board’s decision, finding that the Dental Board’s general counsel served as both adjudicator over the disciplinary proceedings and as an advocate for the Dental Board. This violated Haygood’s due process rights to a fair hearing before an | ¡¡impartial tribunal. The fourth circuit found that the Dental Board’s decision to revoke Haygood’s license was arbitrary and capricious and reversed the trial court judgment affirming the license revocation. The matter was remanded to the Dental Board for a new hearing. See Haygood v. Louisiana State Bd. of Dentistry, supra. This ruling became final when the Louisiana Supreme Court denied writs on December 14, 2012.
On December 26, 2012, after the decision in Haygood v. Louisiana State Bd. of Dentistry, supra, was rendered, and after the supreme court denied writs, the plaintiffs filed a motion to dismiss their appeals from the sustaining of the exceptions of prematurity. The plaintiffs asserted that the trial court deemed the plaintiffs’ claims to be premature pending the resolution of the appeal of the Dental Board action revoking Haygood’s license. Now that the appeal of the decision by the Dental Board was concluded, the plaintiffs requested that their appeals be dismissed as moot, *1213 and their claims be remanded to the trial court and reinstated ab initio.
Ogden, Morrison, Moorhead, and Glorio-so filed a response maintaining that the claims against them are still premature and the appeals are not moot. They pointed out that the fourth circuit remanded the matter to the Dental Board for further consideration and adjudication. Therefore, they claimed that the administrative proceeding is still pending.
On January 31, 2013, this court issued an order denying the plaintiffs’ motion to dismiss its appeals.
I PREMATURITY
The plaintiffs argue that the trial court erred in sustaining the exceptions of prematurity in favor of Ogden, Morrison, Moorhead, and Glorioso. The plaintiffs question the correctness of the trial court’s rulings that they must exhaust administrative remedies prior to filing the present suit and that their claims are not ripe. The plaintiffs contend that the Dental Board has no jurisdiction over the claims for damages asserted here and exhaustion of administrative remedies is not a prerequisite for a damage suit.
The plaintiffs maintain that their claims against Ogden are not related solely to the investigation and proceedings before the Dental Board. According to the plaintiffs, they seek damages against Ogden, Morrison, Moorhead, and Glorioso, and all the defendants, acting in concert, for unfair trade practices, defamation, and unlawful and malicious acts in both the investigation and the manner in which the proceedings against Haygood were conducted. The plaintiffs maintain that their complaints against Ogden are based not on medical evidence adduced in the Dental Board hearing, but on irregularities in the administrative procedure and tortious conduct on Ogden’s part and in concert with the other defendants.
As to Morrison, Moorhead, and Glorioso, the plaintiffs argue that, in the present suit, they are not seeking review of the Dental Board findings. The issue here is whether the plaintiffs were damaged by the defendants’ egregious conduct and activities in investigating Haygood and instigating Dental Board proceedings against him. The plaintiffs assert that all 1 n defendants in this matter are co-conspirators and the plaintiffs seek damages for conspiring to deprive Haygood of due process, producing false evidence against him, engaging in criminal activity on behalf of the Dental Board, and participating in conversations with co-conspirators that breached the confidentiality of the Dental Board’s investigations and proceedings.
Legal Principles
The dilatory exception of prematurity is provided for in La. C.C.P. art. 926. The exception of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. Williamson v. Hospital Service Dist. No. 1 of Jefferson, 2004-0451 (La.12/1/04), 888 So.2d 782; Mineo v. Underwriters at Lloyds, London, 2007-0514 (La.App.4th Cir.10/22/08), 997 So.2d 187. An action will be deemed premature when it is brought before the right to enforce it has accrued. LaCoste v. Pendleton Methodist Hosp., L.L.C., 2007-0008, 2007-0016 (La.9/5/07), 966 So.2d 519. Prematurity is determined by the facts existing at the time the suit is filed. Yokem v. Sisters of Charity of the Incarnate Word, 32,402 (La.App.2d Cir.6/16/99), 742 So.2d 906.
The exception of prematurity may be utilized in cases where the applicable law has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Generally, the *1214 person aggrieved in such a case must exhaust all administrative remedies before being entitled to judicial review. Yokem v. Sisters of Charity of the Incarnate Word, supra. However, the pendency of a proceeding before an administrative agency is not determinative of whether an action filed in |12court is premature. See ANR Pipeline Co. v. Louisiana Tax Comm’n, 2002-1479 (La.7/2/03), 851 So.2d 1145.
The burden of proving prematurity is on the exceptor. Lucky v. Encana Oil & Gas, Inc., 45,413 (La.App.2d Cir.8/11/10), 46 So.3d 731. When an exception of prematurity is brought on the ground that the plaintiff has failed to exhaust his administrative remedies, once the existence of an administrative remedy is proven by the exceptor, the burden shifts to the party opposing the motion to show that he has exhausted these administrative remedies. Waggoner v. American Bank & Trust Co., 423 So.2d 794 (La.App. 4th Cir.1982).
In order to require a petitioner to first exhaust his administrative remedies, the remedies must be adequate. The burden of proof in showing the inadequacy of such a remedy is on the plaintiff. Waggoner v. American Bank & Trust Co., supra. The function of the exhaustion doctrine is to give the body whose decision is under attack an opportunity to review, supplement, and, if necessary, correct its decision. Jones v. Crow, 633 So.2d 247 (La.App. 1st Cir.1993).
Discussion
In this case, Ogden, Morrison, Moorhead, and Glorioso, claimed that the plaintiffs’ lawsuit was premature because the administrative remedies before the Dental Board, the civil district court in Orleans Parish, and the fourth circuit had not been exhausted. As the exceptors, the defendants had the burden of proving the grounds for their exception. They were required to show the existence of an administrative remedy for the claims asserted by ]1sthe plaintiffs. Ogden, Morrison, Moorhead, and Glorioso failed to carry that burden of proof.
Access to the courts is guaranteed in La. Const. Art. 1, § 22, which provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
The Louisiana Constitution also provides that district courts of this state have original jurisdiction over civil and criminal matters. La. Const. Art. 5, § 16(A) provides in pertinent part:
(1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker’s compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.
Exceptions to this constitutional provision which delegate limited judicial authority to administrative agencies are narrowly construed. An administrative agency has only the power and authority expressly granted by the constitution or statutes. Louisiana Horsemen’s Benev. & Protective Ass’n 1993 Inc. v. Fair Grounds Corp., 95-1702 (La.App. 1st Cir.4/4/96), 672 So.2d 340, writs denied, 96-1163, 96-1125 (La.6/7/96), 674 So.2d 968, 969. The exhaustion doctrine applies only when exclusive jurisdiction exists in an administrative agency and the courts have only appellate jurisdiction as opposed to original jurisdiction to review the agency determination. Capitol House Preservation Co., L.L.C. v. Perryman Consultants, Inc., 2001-2524 *1215 (La.App. 1st Cir.12/31/02), 836 So.2d 680, writs denied, 2003-0323, 2003-0324 (La.4/21/03), 841 So.2d 794, 795. The exhaustion doctrine does not apply in this case because the Dental Board never had any jurisdiction whatsoever over the damage claims raised by the plaintiffs.
Actions for money damages are within the original exclusive jurisdiction of Louisiana’s district courts. Louisiana Horsemen’s Benev. & Protective Ass’n 1993 Inc. v. Fair Grounds Corp., supra; Capitol House Preservation Co., L.L.C. v. Perryman Consultants, Inc., supra.
The constitutional article vesting district courts with original jurisdiction of civil matters does not preclude the legislature from creating administrative agencies with quasi-judicial duties, and whose decisions are subject to judicial review. “Original” and “exclusive” are terms regulating jurisdiction of cases as between the several courts established by the constitution. The terms do not preclude the exercise of jurisdiction by administrative agencies over matters which are not ripe for judicial action. See Anderson v. State, 363 So.2d 728 (La.App. 2d Cir.1978), writ denied, 364 So.2d 600 (La.1978).
The legislature has provided that the Dental Board has the power to hear and decide only certain matters regarding the licensing and regulation of the practice of dentistry in this state. These statutes are found in La. R.S. 37:751, et seq. The Louisiana Board of Dentistry is established in La. R.S. 37:753 and the powers and duties of the Dental Board are set forth in La. R.S. 37:760. These include conducting hearings and determining whether to revoke, limit, or suspend a license granted by the Dental Board, impose a lififine against any person licensed by the Dental Board, and investigate complaints of illegal practice or violation of the provisions relating to dentists, when evidence is presented to the Dental Board.
Causes for nonissuanee, suspension, revocation, or imposition of restriction of a dental license are set forth in La. R.S. 37:776.[5]
*1216 117The power of the Dental Board to hear and adjudicate claims against dentists *1217 is set forth in La. R.S. 37:778 which provides that:
The board shall hear and determine all charges against any licensed dentist, licensed dental hygienist, or any person practicing dentistry as defined in R.S. 37:751 for violation of any of the provisions of this Chapter. It may in all cases suspend or revoke the license and reinstate any license if suspended or revoked.
Judicial review of an adjudication by the Dental Board by the district court for the parish of Orleans is governed by La. R.S. 37:786 which provides in pertinent part:
A.(l) Where the board, whether through a disciplinary committee or the entire board, renders a decision in an administrative adjudication, the party aggrieved by it may resort to the civil district court for the parish of Orleans for judicial review. Any such appeals shall be filed in the court in the same manner as original suits are instituted therein. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury.
[[Image here]]
|1SC. All proceedings in the civil district court for the parish of Orleans and appellate courts arising under this Section are civil in nature and shall be heard summarily by the court without a jury, shall take precedence over other civil cases, and shall be tried in chambers or in open court, in and out of term.
[[Image here]]
H. The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
I. The court may affirm the decision of the board or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the party seeking judicial review have been prejudiced because the administrative tribunal’s findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by clear and convincing evidence as determined by the reviewing court. In the application of this rule, the court shall make its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand that the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
11sReview by the fourth circuit is governed by La. R.S. 49:965 which provides:
An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. The appeal shall be taken as in other civil cases.
The matters that may be considered by the Dental Board and the reviewing courts in the administrative proceedings are specifically set forth in the statutes and are *1218 limited to licensing and regulating the practice of dentistry in Louisiana. The Dental Board and the reviewing courts simply do not have the authority to adjudicate the tort claims raised by the plaintiffs in the present suit for defamation, unfair and deceptive trade practices, unlawful and malicious acts, and civil conspiracy or to award monetary damages. Further, none of the exceptors are parties to the Dental Board proceedings.
In the present case, the plaintiffs seek a jury trial and monetary damages against the defendants for alleged egregious and tortious conduct which damaged the plaintiffs. Although the proceedings to revoke Haygood’s dental license and the damage suit are intertwined, the plaintiffs’ suit encompasses matters which go far beyond the licensure issue. The trial court’s actions in sustaining the exceptions of prematurity were in error and must be reversed.
CONCLUSION
For the reasons stated above, we reverse the trial court decisions sustaining exceptions of prematurity and remand the matters to the trial Lncourt for further proceedings. All costs in this court are assessed to the defendants, C. Barry Ogden, Camp Morrison, Karen Moorhead, and Dana Glorioso.
REVERSED AND REMANDED.

. The facts are based upon allegations in the plaintiffs’ petition.

. La. R.S. 37:3520 provides in part:
A. It shall be unlawful for any person knowingly to commit any of the following acts:
(1) Provide contract or private investigator service without possessing a valid license.
(2) Employ an individual to perform the duties of a private investigator who is not the holder of a valid registration card.
(3) Designate an individual as other than a private investigator to circumvent the requirements of this Chapter.
(4) Knowingly make any false statement or material omission in any application filed with the board.
(5) Falsely represent that a person is the holder of a valid license or registration.
(6) Violate any provision of this Chapter or any rule or regulation of the board.

. The trial court denied exceptions of lis pendens filed by Ogden and by Morrison, Moorhead, and Glorioso. They filed writ applications with this court. Ogden's writ application was denied March 29, 2012. The application of Morrison, Moorhead, and Glo-rioso was denied August 9, 2012.

. At the time the two exceptions were argued, the trial court and the litigants were unaware that the fourth circuit was in the process of reversing the Dental Board's ruling due to due process violations and would remand the matter to the Dental Board to begin anew.

. La. R.S. 37:776 provides in pertinent part:
A. The board may refuse to issue or may suspend or revoke any license or permit or impose probationary or other limits or restrictions on any dental license or permit issued under this Chapter for any of the following reasons:
(1) Affliction with a contagious or infectious disease.
(2) Conviction of a crime or entry of a plea of guilty or nolo contendere to a criminal charge.
(3) Fraud, deceit, or perjury in obtaining any diploma, license, or permit issued under the provisions of this Chapter.
(4) Providing false testimony before the board or in any judicial proceeding.
(5) Habitual indulgence in the use of drugs, narcotics, or intoxicating liquors.
(6) Prescribing, dispensing, or administering habit-forming or other legally controlled substances in other than a legal or legitimate manner.
(7) Professional or dental incompetency.
(8) Dental practice which fails to satisfy the prevailing acceptable standards of dental practice in this state.
(9)(a) Division of fees or other remuneration or consideration with any person not licensed to practice dentistry in Louisiana, or an agreement to divide and share fees received for dental services with any non-dentists in return for referral of patients to the licensed dentists, whether or not the patient or legal representative is aware of the arrangement. However, this Paragraph shall not forbid dentists licensed in Louisiana from practicing in a partnership or professional corporation and sharing professional fees or forbid a dentist licensed in Louisiana from employing another dentist licensed in Louisiana. In addition, no dentist licensed in Louisiana shall share professional fees with a dentist whose license is either suspended or revoked during said period of suspension or revocation.
[[Image here]]
*1216 (10)(a) Employing, procuring, inducing, aiding, or abetting a person not licensed or registered as a dentist to engage in the practice of dentistry or to possess an ownership interest of any kind in a dental practice, but the person practiced upon shall not be an accomplice, employer, procurer, inducer, aider, or abetter within the meaning of this provision.
[[Image here]]
(11) Employing unlicensed persons to perform work which under this Chapter can be done only by persons licensed to practice dentistry or dental hygiene in this state.
(12) Making any misrepresentations or false promises, directly or indirectly, to influence, persuade, or induce dental patronage.
(13) Professional connection or association with, or lending his name to, another for the illegal practice of dentistry by another, or professional connection or association with any person holding himself out in any manner contrary to this Chapter.
(14) Practicing under any name other than that which appears on the license or renewal certificate or which is authorized under Chapter 11 of Title 12 of the Louisiana Revised Statutes of 1950, relating to professional dental corporations.
(15) Unprofessional conduct as defined in R.S. 37:775.
(16) Any conduct intended to deceive or defraud the public.
(17) Conduct which disqualifies the licensee to practice dentistry with safety to the public, including inability to practice dentistry with reasonable skill or safety to patients because of mental illness or deficiency or physical illness, including but not limited to deterioration through the aging process or loss of motor skills.
(18) The refusal of a licensing authority of another state to issue or renew a license, permit, or certificate to practice dentistry in that state, or the revocation, suspension, or other restriction imposed upon a license, permit, or certificate issued by such licensing authority which prevents or restricts practice in that state.
(19) Employing solicitors or subsidizing anyone, or paying or presenting any person money or anything of value for the purpose of securing patients, except as allowed by R.S. 37:775.
(20) Refusing to submit to the examinations and inquiry of medical physicians appointed or designated by the board to inquire into the dentist’s physical and mental fitness and ability to practice dentistry with reasonable skill and safety to patients, or following submission to evaluation, failing to comply with the orders or recommendations of said examining physicians.
(21) Making or submitting false or deceptive claims to any patient, insurance company, or indemnity association, company, individual, or governmental authority for the purpose of obtaining monetary compensation for services rendered.
(22) Immoral conduct in exercising the privileges provided for by license or permit issued under this Chapter.
(23) Interdiction or commitment by due process of law.
(24) Violation of any rule, regulation, or order of the board, consent decree agreed upon between the board and the licensee, or any provision of this Chapter.
(25) The failure to pay timely a dentist license renewal fee as required by law.
(26) Non-disclosure of waiving of co-payments to any third party payor.
(27) Failing to cooperate with the board in investigating any matter before the board except for an openly expressed claim of a constitutional privilege; or knowingly failing to respond to a lawful demand from the board for information from any professional licensing or disciplinary authority.
(28) Failing to maintain certification in an approved course of cardiopulmonary resuscitation for the renewal of a dental license.
(29) When license suspension or revocation is otherwise required by law.
B. The board shall establish regulations and procedures to enforce the provisions of this Section.
C. Any license or permit suspended, revoked, or otherwise restricted by the board may be reinstated by the board.
D. The board shall promulgate rules and regulations providing for the expungement of first-time advertising offenses from a licensee’s record after a period of three years from the date of the offense; provided however, the licensee has not had subsequent disciplinary actions of any kind taken against him by the board and the licensee has no disciplinary actions pending by the board.