Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,374-CA
No. 53,375-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 53,374-CA

LARKIN DEVELOPMENT
NORTH, L.L.C.
                Plaintiff-Appellant

versus

CITY OF SHREVEPORT
                Defendant-Appellee

No. 53,375-CA

LARKIN DEVELOPMENT
AT RAILSBACK, L.L.C.
                Plaintiff-Appellant

versus

CITY OF SHREVEPORT
                Defendant-Appellee

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court Nos. 599393 and 599394

Honorable Michael A. Pitman, Judge

* * * * *

SINCLAIR LAW FIRM, L.L.C.                    Counsel for Appellants
By: Scott C. Sinclair

COOK, YANCEY, KING &                         Counsel for Appellee
GALLOWAY, APLC
By: Elizabeth Mendell Carmody
    James Ashby Davis
    Jason Blance Nichols

* * * * *

Before STONE, COX, and McCALLUM, JJ.

**McCALLUM, J.**

Larkin Development North, L.L.C. ("LDNorth"), and Larkin Development at Railsback, L.L.C. ("LDRailsback"), filed inverse condemnation actions against the City of Shreveport ("Shreveport"). In response, Shreveport filed exceptions of no cause of action, lack of subject matter jurisdiction, and prematurity. The trial court granted the exceptions, compelling LDNorth and LDRailsback to file the instant appeal before us.

PROCEDURAL BACKGROUND

Since the trial court granted the exceptions at issue, it did not consider the merits of the case. Therefore, we will note the factual highlights of this case and review its procedural background.

Between July, 2006 and April, 2007, LDRailsback and LDNorth purchased adjacent property totaling 137 acres of land. In 2016, they filed applications for approval of plat designations with the Shreveport-Caddo Metropolitan Planning Commission ("MPC"). In February of 2017, MPC denied the applications. Upon subsequent review, the Shreveport City Council affirmed the MPC's denial of the plat applications.

LDRailsback and LDNorth then filed their inverse condemnation actions under Louisiana law against Shreveport. They alleged that by denying their plat applications Shreveport prevented their ability to develop the property into profitable residential lots. They sought just compensation for their losses caused by Shreveport's denial of the applications.

Thereafter, LDRailsback applied for additional plats with MPC. MPC denied the new applications and the Shreveport City Council affirmed the decision. LDRailsback then amended its petition to include that most recent plat application denial.

MPC's reason for denying the plat applications was that the land in question was in the pathway of the possible future extension of LA 3132. No party disputes that LDRailsback and LDNorth did not seek judicial review of the plat application denials. Alleging that Shreveport's denials prevented them from developing the property to its full extent, LDNorth and LDrailsback filed their inverse condemnation actions, seeking compensation under Louisiana law.

In response, Shreveport filed peremptory exceptions of no cause of action, and alternatively, declinatory exceptions of lack of subject matter jurisdiction and dilatory exceptions of prematurity. Shreveport argued that LDNorth and LDRailsback must first exhaust all administrative and judicial review options prior to bringing any actions for inverse condemnation. With the petitioners failing to exhaust such remedies, Shreveport alleged that they had no cause of action, that the trial court lacked subject matter jurisdiction, and that the actions were premature. LDNorth and LDRailsback countered that their damages and inverse condemnation actions arose at the time that MPC and Shreveport denied the plat applications.

The trial court granted the exceptions. Citing Louisiana Court of Appeal, First Circuit, jurisprudence, it ruled that LDNorth and LDRailsback must first exhaust their rights to direct appeal of the MPC and city council decisions. Essentially, before proceeding with their actions for inverse condemnation, the petitioners must first exhaust all administrative remedies. Without such remedies sought, the trial court found that the petitioners failed to show a cause of action and thus failed to show that the district court had subject matter jurisdiction over the matter. Furthermore, it found that that the issue of compensation was not ripe for judicial consideration.

2

STANDARD OF REVIEW

Whether a district court has subject matter jurisdiction over a case is subject to *de novo* review. *Beasley v. Nezi, LLC*, 2016-1080 (La. App. 1 Cir. 9/8/17), 227 So. 3d 308. The standard of review for an appeal of a no cause of action ruling is *de novo*. *Acurio v. Cage*, 52,309 (La. App. 2 Cir. 9/26/18), 257 So. 3d 824, *writ denied*, 2018-1762 (La. 1/8/19), 260 So. 3d 581. Appellate review of a prematurity exception ruling is typically *manifest error*; however, when the ruling involves a question of law, it is reviewed *de novo*. *Bayou Orthotic & Prosthetics Ctr., L.L.C. v. Morris Bart, L.L.C.*, 2017-557 (La. App. 5 Cir. 3/28/18), 243 So. 3d 1276. Therefore, our review standard for all matters regarding this case is *de novo*.

DISCUSSION

**JURISPRUDENTIAL CONFLICT**

LDNorth and LDRailsback argue that the trial court erred in requiring that they first exhaust all administrative remedies. Shreveport counters that Louisiana law requires that LDNorth and LDRailsback first seek all administrative remedies before filing for compensation. In essence, one party argues that the right to compensation arose immediately upon the alleged taking. The other party argues that the exhaustion doctrine prevents claims for compensation from arising until all administrative remedies are pursued. Thus, no cause of action exists until all measures to prevent the damages from arising are exhausted. The trial court agreed with the latter.

In its decision, the trial court cited two cases for support of its judgment: *Mercan, Inc. v. City of Baton Rouge*, 2000-0660 (La. App. 1 Cir. 5/11/2001), 797 So. 2d 722, *writ denied*, 2001-1685 (La. 9/21/01), 797 So. 2d 676; and *Liberty Mutual Ins. Co. v. Louisiana Ins. Rating Comm'n*, 1997-

1043 (La. App. 1 Cir. 6/29/98), 713 So. 2d 1250, *writ denied*, 1998-2072 (La. 11/6/98), 728 So. 2d 396. Citing the above cases, the trial court ruled that because LDNorth and LDRailsback failed to directly appeal the plat application denials, they then had no causes of action for inverse condemnation. The trial court further found that it lacked subject matter jurisdiction and that any action for compensation was premature.

In *Mercan*, the Louisiana Court of Appeal, First Circuit, considered whether a party had a cause of action for damages. The City of Baton Rouge, through its Subdivision Review Committee, denied a subdivision application to Mercan, Inc. *Mercan, Inc. v. City of Baton Rouge*, *supra*. Although it alleged that the denial was arbitrary and capricious, Mercan did not appeal the city's decision to the district court. *Id*. Instead, Mercan sold the property at issue to the Baton Rouge Recreation and Parks Commission. *Id*. Mercan then filed an inverse condemnation action against Baton Rouge, seeking compensation for the difference between the value of the subdivision and the amount that Mercan received selling the property. *Id*.

Citing *Liberty Mutual* as authority, the court found that Mercan's failure to seek judicial review of the subdivision application denial prevented the courts an opportunity to rectify the alleged arbitrary and capricious or abusive conduct. *Id*. Therefore, because Mercan failed to seek judicial review to rectify the alleged injustice, and prevent damages, it no longer had a cause of action. *Id*.

In *Liberty Mutual*, the First Circuit considered the then novel issue of a taking and the exhaustion doctrine. Liberty Mutual sued the State of Louisiana through the Louisiana Department of Insurance, alleging that the State caused it injury by setting unreasonably low, mandatory insurance

4

rates. *Liberty Mutual Ins. Co. v. Louisiana Ins. Rating Comm'n*, *supra*. Alleging a taking had occurred, Liberty Mutual filed an inverse condemnation action and sought compensation. *Id.*

The court reviewed the exhaustion doctrine with regard to administrative review and remedies. It further focused on the statutory scheme that gives express recourse with respect to insurance rate changes. It took note that Liberty Mutual had failed to seek any review of the rate changes and decided the following:

> Applying these principles to our consideration of the allegations of the petition before us, we conclude that because Liberty Mutual failed to seek administrative and/or judicial review of the LIRC's denial of its rate requests, except with regard to the 1989 request, it cannot now assert a cause of action against LIRC for monetary damages for inverse condemnation based on those rulings.

*Id.* at 1254.

We note that the above cases are decisions of the Louisiana Court of Appeal, First Circuit. In this circuit, we have case law seemingly in conflict with those opinions, particularly *Anderson v. Bossier Parish Police Jury,* 45,639 (La. App. 2 Cir. 12/15/10), 56 So. 3d 275.

*Anderson* involves a Bossier Parish proposed and subsequently enacted ordinance that changed the elevation of a base flood plain zone. The petitioners alleged that the ordinance's enactment caused damage to their property value when their property was rezoned into the flood plain. *Id.* Noting that the injury to petitioners occurred at the time that the ordinance went into effect, this Court stated, "This event changed the status of the plaintiff's land and made its development more burdensome, if not impossible." *Id.* Thus, applying La. R.S. 13:15111, this Court held that prescription began to run from the date of discovery of the taking. *Id.* The

5

date of taking was held to be the date when the Police Jury passed the ordinance and it became effective. *Id.*

At issue in the *Anderson* case was whether the inverse condemnation cause of action had prescribed. This Court found that both the cause of action to challenge the ordinance and compensation action had not yet prescribed. *Id.* We take particular note that prescription for both actions began to run at the same time, that time being the date of the passage and enactment of the ordinance. *Id.* Thus, the delay for filing suit began to run on the compensation action at the same time as the action to challenge the enactment of the ordinance. *Id.* Aphoristically speaking, this Court decided that a cause for compensation existed despite the lack of exhaustion of the administrative remedy to challenge the ordinance. Furthermore, with regard to the inverse condemnation action, it is axiomatic that a cause of action cannot begin to prescribe before it comes into existence. Therefore, *Anderson* would seem to imply that the trial court, in the case before us, erred in granting the exception of no cause of action.

Furthermore, a recent Louisiana Supreme Court case, *Crooks v. Department of Natural Res.*, 2019-0160 (La. 1/29/20), 2020 WL 499233, supports the finding that an action for inverse condemnation arises upon injury. The *Crooks* Court considered an action for compensation for alleged damages caused by federal and state construction projects. At issue was a project that ultimately caused the flooding and loss of certain properties in and around the Catahoula Basin. The Court determined that a taking had occurred and that the three-year prescriptive period found in La. R.S. 13:5111 applied. *Id.* The Court further explained, "Prescription begins to run when

6

the claimant is aware of those facts which give rise to a cause of action." *Id.* at 15.

LDNorth and LDRailsback assert that the damage caused by Shreveport's inverse condemnation occurred when the plat applications were denied, before any direct appeal option came into existence. They argue that Shreveport's decision to deny their plat application, not the exhaustion of the administrative direct appeal, gave rise to their action for compensation. Therefore, they assert that the trial court erred in granting the exceptions.

The statute that provides the prescription delay for compensation actions further indicates that the action arises at the time of injury. The last sentence of La. R.S. 13:511(A) states, "Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the *date of the taking*." (*emphasis added*). Therefore, both the statutory framework and the jurisprudence of this Court appear to support the argument by LDNorth and LDRailsback.

**EXHAUSTION DOCTRINE**

Shreveport has built its arguments upon an exhaustion doctrine foundation. Since the trial court cited case law that invoked the doctrine in order to deny compensation actions, we will review the doctrine and consider its effects on the case before us.

Article 1, Section 22 of the Louisiana Constitution guarantees the people of Louisiana access to the courts. Article 5, Section 16(A) grants original jurisdiction of civil and criminal matters to the district courts of this state. Exceptions do exist where a constitutional mandate or the legislature may delegate limited, narrowly construed, judicial authority to

7

administrative agencies. For example, and pertinent to the case before us, La. R.S. 33:101.1 *et seq.* provides for the administrative authority and procedure of handling subdivision grants and plat applications. However, "[a]n administrative agency has only the power and authority expressly granted by the constitution or statutes." *Haygood v. Dies*, 47,765 (La. App. 2 Cir. 5/15/13), 114 So. 3d 1206, 1214; *Louisiana Horsemen's Benev. & Protective Ass'n 1993 Inc. v. Fair Grounds Corp.*, 1995-1702 (La. App. 1 Cir. 4/4/96), 672 So. 2d 340, *writs denied*, 1996-1163, 1996-1125 (La. 6/7/96), 674 So. 2d 968, 969.

"The function of the exhaustion doctrine is to give the body whose decision is under attack an opportunity to review, supplement, and, if necessary, correct its decision." *Haygood v. Dies*, *supra*; *Jones v. Crow*, 633 So. 2d 247 (La. App. 1 Cir. 1993). However, "[i]n order to require a petitioner to first exhaust his administrative remedies, the remedies must be adequate." *Haygood v. Dies*, *supra*. Thus, we must determine if the agencies, the MPC and Shreveport City Council, can provide the adequate remedies pursued in the inverse condemnation petitions filed by LDNorth and LDRailsback.

The lack of direct appeal of the plat decisions to the district court forms the crux of the exhaustion doctrine argument propounded by Shreveport. However, we note that only the same, narrow remedies authorized to the agencies, would be available on direct appellate review of those decisions. In other words, if the agencies lack authority to provide a remedy of compensation, then on direct appeal of their decision to deny the plat applications, the district court would also be precluded from awarding compensation.

8

"The exhaustion doctrine applies only when exclusive jurisdiction exists in an administrative agency and the courts have only appellate jurisdiction as opposed to original jurisdiction to review the agency determination." *Haygood v. Dies*, *supra*; *Capital House Preservation Co., L.L.C. v. Perryman Consultants, Inc.*, 2001-2524 (La. App. 1 Cir. 12/31/02), 836 So. 2d 680, *writs denied*, 2003-0323, 2003-0324 (La. 4/21/03), 841 So. 2d 794, 795. However, "[a]ctions for money damages are within the original exclusive jurisdiction of Louisiana's district courts." *Haygood v. Dies*, *supra*, *Louisiana Horsemen's Benev. & Protective Ass'n 1993 Inc. v. Fair Grounds Corp.*, *supra*; *Capital House Preservation Co., L.L.C. v. Perryman Consultants, Inc.*, *supra*.

La. R.S. 33:101.1 *et seq.* do not provide authority or jurisdiction for the administrative agencies to determine and award compensation for damages due to inverse condemnation. Furthermore, the exhaustion doctrine cannot apply to the case at hand because LDNorth and LDRailsback seek only damages and compensation for the inverse condemnation of their property. They do not seek any relief from or ask that the district court overturn the denials of their plat applications. Therefore, it would seem that the exclusive jurisdiction of the inverse condemnation actions in this case lie with the district court.

**SUBJECT MATTER JURISDICTION**

"Subject matter jurisdiction is the legal power and authority of a tribunal to adjudicate a particular matter involving the legal relations of the parties and to grant the relief to which the parties are entitled." See La. C. C. P. arts. 1 and 2; *Capital House Preservation Co., L.L.C. v. Perryman Consultants, Inc.*, *supra*. As cited above, the Louisiana Constitution vests

9

district courts with original jurisdiction over civil and criminal matters, unless other jurisdictional authorization can be found through constitutional or legislative mandate. Furthermore, as stated above, money damages and inverse condemnation actions are within the original, exclusive jurisdiction of the district courts of the state.

LDNorth and LDRailsback have filed actions for inverse condemnation, seeking only compensation for damages to their property caused by MPC's and the Shreveport City Council's denials of their plat applications. They do not challenge the denials of their plat applications as such. Therefore, their actions are ones that are within the judicative authority of the district courts. Since the district court does have subject matter jurisdiction of the inverse condemnation actions, it erred in granting the exception of subject matter jurisdiction.

**NO CAUSE OF ACTION**

"A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition." *Villareal v. 6494 Homes, L.L.C.*, 48,302 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1246; *Rangel v. Denny*, 47,381 (La. App. 2 Cir. 8/8/12), 104 So. 3d 68. "The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence." *Villareal v. 6494 Homes, L.L.C*, *supra*; *City of New Orleans v. Board of Dir. of La. State Museum*, 1998-1170 (La. 3/2/99), 739 So. 2d 748. The exception is triable on the face of the petition; the well-pleaded facts in the petition and any annexed documents must be accepted as true; and all

10

reasonable inferences are made in favor of the nonmoving party. *Villareal v. 6494 Homes, L.L.C.*, *supra*.

In their petition, LDNorth and LDRailsback allege that damages began to accrue when MPC and the Shreveport City Council denied the plat applications. We have already found that at the time that the city denied the applications, the taking occurred. Furthermore, we have already discussed that at the time the taking occurred, prescription began to run on the actions for compensation. Again, it is axiomatic that a cause of action cannot begin to prescribe before it comes into existence. Therefore, under the facts as pleaded, we find that a cause of action does exist. Thus, the trial court erred in granting the exception of no cause of action.

**PREMATURITY**

La. C.C.P. art. 926 provides the dilatory exception of prematurity. "The exception of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination." *Haygood v. Dies*, *supra*; *Williamson v. Hospital Service Dist. No. 1 of Jefferson*, 2004-0451 (La. 12/1/04), 888 So. 2d 782; *Mineo v. Underwriters at Lloyds, London*, 2007-0514 (La. App. 4 Cir. 10/22/08), 997 So. 2d 187. "An action will be deemed premature when it is brought before the right to enforce it has accrued." *Haygood v. Dies*, *supra*; *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 2007-0008, 2007-0016 (La. 9/5/07), 966 So. 2d 519.

"The exception of prematurity may be utilized in cases where the applicable law has provided a procedure for a claimant to seek administrative relief before resorting to judicial action." *Haygood v. Dies*, *supra*. "However, the pendency of a proceeding before an administrative agency is not determinative of whether an action filed in court is premature."

11

*Id.*; *ANR Pipeline Co. v. Louisiana Tax Comm'n*, 2002-1479 (La. 7/2/03), 851 So. 2d 1145. The excepting party bears the burden of proving prematurity and, as discussed above, in order to require a petitioner to exhaust administrative remedies, the remedies must be adequate. *Haygood v. Dies*, *supra*.

No adequate remedies lie within the authority of Shreveport. LDNorth and LDRailsback seek compensation for damages caused by the city's inverse condemnation of their property. They do not seek a review of the denial of the plat applications. As discussed above, the statutes that give authority to Shreveport to grant or deny plat applications, do not grant Shreveport jurisdiction to decide and award the compensation for a taking. Thus, judicial review of MPC's and the Shreveport City Council's decisions, alleged as a requirement by Shreveport, would be narrowly restrained to a review of the plat denials.

Furthermore, the damages alleged by LDNorth and LDRailsback began to accrue at the time of the plat denials. We have already determined that the taking occurred at the time that the city denied the applications. Furthermore, we have already found that prescription began to run on the actions for compensation at that time as well. Therefore, the actions are ripe. The trial court erred in granting the exception of prematurity.

**THE LOUISIANA CONSTITUTION AND TAKINGS**

Our state constitution requires that the state pay just compensation, to the full extent of the loss, when it takes property. As discussed below, this mandate is required both when the state takes land through court proceedings (expropriation) or damages land (inverse condemnation).

"In its most basic aspect, eminent domain is the power of a government to compel its subjects to give up property interests in land or things." *State Through Dept. of Transp. & Dev. v. Chambers Inv. Co., Inc.*, 595 So. 2d 598, 601 (La. 3/2/92) (citing W. Stoebuck, *Nontrespassory Takings in Eminent Domain* 4 (1977)).

> There can be little doubt that one aim of Article I, § 4, of our state constitution in requiring that the owner shall be compensated for property "taken or damaged … to the full extent of his loss" was to assure that the State and its subdivisions compensate owners for any taking or damaging of their rights with respect to things as well as for any taking or damaging of the objects of those rights.

*State Through Dept. of Transp. & Dev. v. Chambers Inv. Co., Inc., supra* at 602.

Many differences exist between an expropriation proceeding and an inverse condemnation proceeding. One stark difference is that the legislature has expressly created and enacted statutes settling multiple issues involved with a government entity's ability to expropriate land. In contrast, a long jurisprudential record has defined and resolved many issues with regard to an inverse condemnation action. One thing that both actions do have in common, however, is our state constitution. As noted above, both actions derive their existence from Article I, Section 4 as follows:

> (A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

> (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.

In expropriation proceedings, the government entity wishing to take land can look to specific statuary framework for authority and procedure.

For example, La. R.S. 48:441 gives the Department of Transportation and Development authority to acquire land by expropriation. That statute falls within Title 48, Chapter 1, Part XVIII, under the unambiguous heading of "Expropriation by a Declaration of Taking." From the statutory framework of this Chapter alone, one can glean the reasons as to why expropriation proceedings are required prior to a government taking. The legislature and the people, through their state Constitution, wish to protect the fundamental right of citizens to own and exploit property. It is clear then that before a government entity can take land from a citizen, we, as a state, mandate a judicial review of the matter. If a court confirms the expropriation, our state constitution then mandates that just compensation be paid to the landowner.

Many benefits are derived from the judicial review of such actions. First, the landowner is assured a due process right to have judicial review prior to losing property to the state. Second, if the land is taken, it ensures that a judicial hand fairly considers and justly compensates the landowner. Third, in the event that a court denies the expropriation, it hopefully prevents damage or injury to the landowner.

In contrast, an inverse condemnation action is a judicial creation that ensures citizens have an action for compensation when the state damages their property prior to or without a pending expropriation proceeding.

> [O]ur constitution requires compensation even though the State has not initiated expropriation proceedings in accordance with the statutory scheme set up for that purpose. If there has been any taking or damaging, the expropriating entity is bound to make reparations according to Article I, § 4. Although the legislature has not provided a procedure whereby an owner can seek damages for an uncompensated taking or damaging, this court has recognized the action for inverse condemnation arises out of the self-executing nature of the constitutional command to pay just compensation.

14

*State Through Dept. of Transp. & Dev. v. Chambers Inv. Co., Inc.*, *supra* at 602.

Aside from the clear mandate by our state constitution that citizens be compensated for takings, the legislature of this state, in at least some cases, has clearly provided that compensation not be thwarted by a requirement to exhaust all administrative remedies. For example, just as the legislature authorizes the Department of Transportation and Development to expropriate property, the same statutory framework further mandates that compensation is not waived by a lack of administrative remedy. La. R.S. 48:447 provides that if a defendant wishes to contest the expropriation, he may and must file a motion to contest its validity. However, it also states the following: "Failure to file the motion within the time provided constitutes a waiver of all defenses to the suit *except claims for compensation*." (Emphasis added).

The most striking difference between expropriation proceedings and inverse condemnation is the time at which the damage occurs. Under typical expropriation procedure, the injury (the taking) only occurs after court order. In an inverse condemnation proceeding, the injury has already occurred prior to court proceedings. Our state constitution mandates a right to compensation at the time of the taking. As cited above, our legislature, in expropriation proceedings, provides that a defendant's failure to exhaust all administrative remedies does not waive his right to compensation.

In light of that example, finding in favor of Shreveport would create an incongruous outcome. Essentially, we would be deciding that one could be proscribed his constitutionally mandated compensation in a case where the damage to his property has already occurred because he failed to exhaust

15

all administrative remedies. Yet, a defendant, in a case where the damage has yet to occur, would have statutory protections from waiving his same constitutional right to compensation where he also failed to exhaust all administrative remedies. Again, we note that the courts of this state have held that both expropriation and inverse condemnation actions arise from the same constitutional mandate of just compensation. Thus, both actions should enjoy and inherit the same constitutional protections and rights associated with such.

Furthermore, we have already cited that our constitution mandates that actions for compensation arise at the time of the taking. With no constitutional mandate to the contrary, we cannot find adequate authority that the exhaustion doctrine can be employed to override or destroy the constitutional right to compensation for a taking by the government.

## CONCLUSION

The judgment of the trial court is REVERSED. Pursuant to La. R.S. 13:5112, all costs of this appeal are assigned to the appellees in the amount of $12,034.02.